UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSHUA JERMAINE
MCKNIGHT #835357,

        Plaintiff,

v.

UNKNOWN PERRY, et al.,

        Defendants.
_____/

Case No. 2:18-cv-00099

Hon. Janet T. Neff
U.S. District Judge

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Joshua Jermaine McKnight pursuant to 42 U.S.C. § 1983. On October 1, 2017, Plaintiff was involved in a fight at the Chippewa Correctional Facility (URF). Plaintiff asserts that he lost consciousness. Defendants Perry and Unknown Party #2 handcuffed Plaintiff and "half carried" him from the chow hall to administrative segregation. Plaintiff alleges that he was denied medical care. Plaintiff states that health care employee Unknown Party #1 was distributing medication in the administrative segregation unit. Plaintiff informed Unknown Party #1 that he was suffering with memory loss, headache, dizziness, nose bleeds, eye twitch, and nausea as a result of a blow to his head. Unknown Party #1 told Plaintiff to submit a kite.[1]

---

[1] The Court previously dismissed Defendant Pawley. The only remaining Defendants are Correctional Officer Perry, Unknown Party #1 (a nurse), and Unknown Party #2 (another correctional officer).

Plaintiff was issued a Class I misconduct report for fighting. (ECF No. 19-3, PageID.115.) The October 3, 2017, Misconduct Hearing Report indicates that Plaintiff pleaded guilty to the charge of fighting, was present at the hearing, and had nothing more to add to his admission of guilt. (PageID.114.) Plaintiff was sanctioned with ten days of detention. (*Id.*) Plaintiff filed his initial grievance on March 3, 2018, five months after the altercation.

This report and recommendation addresses (1) Defendant Perry's motion for summary judgment, which asserts that Plaintiff failed to exhaust his administrative remedies, (ECF No. 18), and (2) Plaintiff's motion for an order directing Defendant Perry to identify Unknown Party #1 and Unknown Party #2. (ECF No. 27.)

The undersigned respectfully recommends that the motion for summary judgment be granted due to Plaintiff's failure to properly exhaust his administrative remedies. It is further recommended that the Court deny Plaintiff's motion to identify unknown parties.

**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

2

matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). But a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit repeatedly has emphasized that the party with the burden

3

of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel*, 270 F.3d at 1056 (citing 11 James William Moore, et al., *Moores Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion

procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

5

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of Policy Directive 03.02.130. *Id.* at ¶ Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

**Plaintiff's Grievance**

On March 3, 2018, Plaintiff filed grievance number URF-1803-0784-28E regarding the October 1, 2017, fighting incident and his subsequent placement in segregation. (ECF No. 19-2, PageID.104.) In this grievance, Plaintiff asserted that

7

he sustained a head injury at the URF food service area. Instead of being taken to health services, he was brought to segregation. After Plaintiff was transferred to the Alger Correctional Facility (LMF), he began experiencing severe headaches and nose bleeds. Plaintiff saw a doctor on February 28, 2018. Plaintiff stated that the doctor diagnosed him with a severe concussion and prescribed Tylenol. Plaintiff asserted that Defendant Perry, Sgt. Pauley, and a health service employee at URF acted with deliberate indifference to his serious medical needs after the October 1, 2017, altercation. Plaintiff requested monetary damages of two million dollars as compensation. Plaintiff provided no explanation for his late filing.

The Step I grievance was rejected as untimely. (PageID.105.) The rejection noted that Plaintiff had provided no explanation for his late filing. The rejection was upheld at Step II (PageID.103) and at Step III (PageID.101.)

## Analysis

Plaintiff argues that he met the exhaustion requirement by filing his grievance through each step of the MDOC grievance process. Plaintiff is wrong. As mentioned, Plaintiff must properly exhaust his administrative remedies. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). To do so, Plaintiff needed to adhere to the grievance procedures established by the MDOC, which includes compliance with each of the grievance step time requirements. MDOC procedures require the grievant to attempt to resolve the issue within two business days after becoming aware of the grievable issue and to file a Step I grievance within five business days

8

after making the attempt to resolve the issue with an appropriate staff member as set forth in ¶ P of Policy Directive 03.02.130.

Plaintiff failed to comply with these procedures. Plaintiff's grievance was rejected at Step I due to untimeliness and his failure to provide any reason that could have prevented him from filing a timely grievance. The rejection was upheld at Step II and Step III. A grievance rejected as untimely during the administrative process is not properly exhausted. *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009).

Further, Plaintiff requests that the Court order Defendant Perry to identify the unknown parties. (ECF No. 27.) Specifically, Plaintiff requests the full names, clock numbers, and addresses of each employee present during the October 1, 2019, incident, and the full names, clock numbers, and addresses of all health care staff working on that date. Plaintiff requests identification of the MDOC private health care provider and staff supervisors.

Plaintiff's motion should be denied for several reasons. First, Plaintiff has not indicated that he made an appropriate discovery request by first submitting his request to Defendant Perry as required by the Federal Rules of Civil Procedure. Second, Plaintiff was aware of the existence of the unknown parties and could have described their actions. Unknown Party #2 allegedly assisted Defendant Perry in placing handcuffs on Plaintiff after the altercation, and Unknown Party #1 is the alleged health care employee who was distributing medication in Plaintiff's unit after the incident. Third, as instructed above, Plaintiff failed to exhaust his administrative remedies against any possible Defendant. Accordingly, the undersigned recommends

9

that the Court deny Plaintiff's motion for identification of Unknown Parties #1 and #2.

## Recommendation

I respectfully recommend that Defendant Perry's motion for summary judgment (ECF No. 18) be granted, dismissing Defendant Perry without prejudice due to Plaintiff's failure to properly exhaust his administrative remedies.

I further recommend that Plaintiff's motion for documents that could identify Unknown Parties #1 and #2 (ECF No. 27) be denied.

Acceptance of this recommendation will result in the dismissal of this case.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997), *overruled on other grounds in LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). For the same reasons that the undersigned recommends granting Defendant's motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

Dated:  May 7, 2019                                /s/ *Maarten Vermaat*
                                                                MAARTEN VERMAAT
                                                                U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).